UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACQUELINE MARIE JOHNSON,

        Plaintiff,               Case No.  13-12139

v.                           SENIOR UNITED STATES DISTRICT JUDGE
                           ARTHUR J. TARNOW

COMMISSIONER OF
SOCIAL SECURITY,            MAGISTRATE JUDGE DAVID R. GRAND

        Defendant.
_____/

## ORDER DECLINING TO ADOPT REPORT AND RECOMMENDATION [11]; GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [9]; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [10]; AND REMANDING THE CASE

On January 22, 2014, the Magistrate Judge issued a Report and Recommendation ("R&R") [11] recommending that the Court grant Defendant's Motion for Summary Judgment [10] and deny Plaintiff's Motion for Summary Judgment [9].  No objections were filed.

For the reasons stated below, the Court declines to adopt the R&R [11]. Plaintiff's Motion for Summary Judgment [9] is **GRANTED IN PART**.  Defendant's Motion for Summary Judgment [10] is **DENIED**.  This case is **REMANDED** for a new decision consistent with this Order.

# I. Factual Background

The Court adopts the factual background as set out in the R&R [11], with the following additions:

Plaintiff has a history of trauma. Progress notes from Genesee County Community Mental Health (Genesee) reflect Plaintiff's report that she was sexually abused by her stepfather between the ages of thirteen and seventeen, and that her stepfather stalked her for three years. She also reported that her mother blamed her for "seducing" her stepfather and that her mother continues to believe the abuse was Plaintiff's fault. Plaintiff tried to hang herself in 2009 due to being around her mother. Perhaps relatedly, a session note from Genesys Hillside Center for Behavioral Services (Hillside) dated October 9, 2008, reports that Plaintiff recounted meeting her biological father for the first time in 2006, a meeting that reportedly "brought back" Plaintiff's issues concerning the sexual abuse and her mother's minimization of it. Finally, several medical records and Plaintiff's testimony at the administrative hearing indicate that Plaintiff has been held at gunpoint during an armed robbery.

A Genesee progress note states that Plaintiff "has difficulty trusting people due to the trauma she has experienced in the past," and that her abilities were "limited due to her inability to leave the house." Another Genesee note, dated September 4, 2010, reports that Plaintiff was experiencing panic attacks that woke her up at night, if she

was able to sleep, and that Plaintiff was "struggling to complete daily tasks." A session note from Hillside, dated May 25, 2009, reports that Plaintiff said she had not left her house since her previous session five days earlier, instead staying in her bed "because she feels safe" there.

At the administrative hearing, in addition to Plaintiff's testimony described in the R&R [11], Plaintiff testified that when driving to a store or a gas station, she will sometimes drive to four different locations until she reaches one "that has the least amount of people there." She also testified that her only long-distance travel in the preceding two years was a trip to Detroit for a funeral, which she left to sit in her car because there were "so many people there" and she "felt like [she] was going to freak out," even though the others in attendance were family.

## II. Standard of Review

The Court has discretion to reject or modify a Magistrate Judge's Report and Recommendation on motions for summary judgment. *See* 28 U.S.C. § 636(b)(1).

Judicial review of a decision by an Administrative Law Judge ("ALJ") is limited to determining whether the factual findings are supported by substantial evidence and whether the ALJ employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The ALJ's factual findings "are conclusive if supported by substantial evidence." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 243

(6th Cir. 1987). "Substantial evidence is defined as more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial evidence standard "does not permit a selective reading of the record," as the reviewing court's assessment of the evidence supporting the ALJ's findings "must take into account whatever in the record fairly detracts from its weight." *McLean v. Comm'r of Soc. Sec.*, 360 F. Supp. 2d 864, 869 (E.D. Mich. 2005) (quoting *Garner v. Heckler,* 745 F.2d 383, 388 (6th Cir. 1984)).

### III. Analysis

The R&R [11] recommends that the Court deny Plaintiff's Motion for Summary Judgment [9], grant Defendant's Motion for Summary Judgment [10], and affirm the ALJ's decision denying Plaintiff benefits. The R&R reaches this recommendation because it concludes that the ALJ "gave good reasons for discrediting [Plaintiff's] allegations of work-preclusive limitations." Proceeding from its conclusion that the ALJ properly found Plaintiff's symptoms less severe than she alleges, the R&R further concludes that the ALJ "reasonably accommodated [Plaintiff's] fear of being around large groups of people by limiting her only to occasional interpersonal contact with coworkers and the public." Finally, because a vocational expert testified that Plaintiff could perform a significant number of jobs despite her limitations—as framed by the

ALJ—the R&R concludes that substantial evidence supports the ALJ's decision finding that Plaintiff is not disabled.

The lynchpin of the R&R's conclusion is its finding that the ALJ acted within his discretion when evaluating the credibility of Plaintiff's testimony concerning the severity and limiting effects of her symptoms. The Court, however, finds that the ALJ's credibility assessment violated Social Security Ruling 96-7p. The Court thus declines to adopt the R&R, instead remanding for a reassessment of Plaintiff's credibility, employing the proper legal standards, and a new decision on her application consistent with the reassessment.

## A.    Plaintiff's Noncompliance with Treatment

The R&R [11], citing Social Security Ruling 96-7p, concludes that the ALJ did not err by considering Plaintiff's noncompliance with treatment when discrediting her testimony. As quoted in the R&R, Social Security Ruling 96-7p states that a claimant's testimony "may be less credible . . . if the medical reports or records show that the individual is not following [her] treatment as prescribed and there are no good reasons for this failure." 1996 WL 374186, at *7 (1996). The logic behind the ruling is that claimants with severe symptoms are more likely to comply with treatment, since the severity of their symptoms may increase their motivation to seek the relief promised by their treatment plan. *See id.* ("Persistent attempts by the individual to

obtain relief of pain or other symptoms ... may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms.").

This logic rests on assumptions about claimants and their circumstances which may be inapplicable to an individual claimant's case. Accordingly, Ruling 96-7p provides that an ALJ "*must not* draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *Id.* (emphasis added). The ruling lists examples of sound explanations for noncompliance, recognizing, for instance, that a claimant's poverty may interfere with her ability to comply with treatment even if she is motivated to do so. *Id.* at *8 ("The individual may be unable to afford treatment and may not have access to free or low-cost medical services."). Further, though Ruling 96-7p itself is silent on the effect of mental illness on compliance, the Sixth Circuit has joined other federal courts in recognizing that for a claimant suffering from mental illness, noncompliance with treatment may be a symptom of her condition, rather than evidence that her condition is not disabling. *See White v. Comm'r of Soc. Sec.*, 572

F.3d 272, 283 (6th Cir. 2009) (citing *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009)).

Here, the record should have put the ALJ on notice that Plaintiff's noncompliance with treatment was likely attributable at least in part to financial hardship and related difficulties. A Genesee progress note dated September 23, 2010, notes that Plaintiff "reported that she has not been in therapy because she was evicted with her children, lived on the street for 2 weeks and was assaulted." Further, a Genesee medication review dated June 23, 2010, reports that Plaintiff claimed she did not fill a prescription because she could not afford it. Finally, as noted in the R&R [11], a record by Dr. Surapaneni dated April 21, 2009, reflects that Plaintiff attributed her failure to see the doctor in several months to losing her insurance benefits and not being able to afford treatment. Though the R&R suggests that the ALJ could properly rely on this fact to discredit Plaintiff's testimony, Ruling 96-7p explicitly identifies a claimant's inability to afford treatment as a potential justification for noncompliance.

The record also should have put the ALJ on notice that Plaintiff's noncompliance with treatment may have been partly attributable to her symptoms. A Genesee progress note dated December 30, 2009, predicts that "[Plaintiff's] fear of leaving the home and being around people may block her attendance and therapy." Another such note, dated August 19, 2010, contains the following quotation from

Plaintiff, which illustrates how her symptoms interfered with her ability to comfortably access treatment: "I had to stop on the way here for 20 min[utes] ... [u]ntil I could stop shaking and continue driving. I've had to spend a lot [of] time at One Step with people all around and it [terrifies] me." Session notes from Hillside, dated May 14 and May 19, 2009, report that Plaintiff was having difficulty leaving her bed, and needed her mother's assistance to keep her treatment appointments. Finally, Amanda Lizotte, Plaintiff's case manager at New Passages, testified at the hearing that when Plaintiff attempted to meet her at her office, Plaintiff called from the parking lot to say that she could not enter due to the presence of other people in the waiting room. This evidence indicates that although Plaintiff "often missed appointments and avoided follow through," as highlighted by the ALJ, these problems may reflect the severity of her symptoms. *See White*, 572 F.3d at 283.

It was the ALJ's responsibility to consider the foregoing evidence before relying on Plaintiff's noncompliance to discredit her testimony. Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *7. The ALJ's written opinion contains no sign that the ALJ did so. Further, Social Security Ruling 96-7p notes that an ALJ "may need to recontact the [claimant] or question the [claimant] at the administrative proceeding" in order to

evaluate alternative explanations for noncompliance.  *Id.*  But the ALJ declined to ask Plaintiff a single question at the hearing.[1]

For the foregoing reasons, the Court does not agree with the R&R [11] that the ALJ properly relied on Plaintiff's noncompliance with treatment in discrediting her testimony.   Instead, the Court finds that the ALJ's reliance on Plaintiff's noncompliance, without considering potential justifications, violated Social Security Ruling 96-7p.

## B.   Plaintiff's Activities

Social Security Ruling 96-7p requires an ALJ to provide an explanation of her credibility determinations "sufficiently specific to make clear to the [claimant] and to any subsequent reviewers the weight the adjudicator gave to the [claimant's] statements and the reasons for that weight."  *Id.* at *2.  In the Sixth Circuit's words, "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence."  *Rogers*, 486 F.3d at 248.

Aside from Plaintiff's noncompliance with treatment, discussed above, the only explicit basis for the ALJ's credibility assessment was the ALJ's finding that Plaintiff's

---

[1] Plaintiff was questioned by her attorney at the hearing, but his questions did not address Plaintiff's noncompliance with treatment.

"activities" are not consistent with her disability claim.  The ALJ's opinion does not specify the allegedly inconsistent activities.  Though the credibility finding is followed by a summary of certain facts from the medical records, even this summary says next to nothing about Plaintiff's activities.[2]  The transcript of the hearing likewise provides no insight, as the ALJ declined to ask Plaintiff any questions about her activities (or any questions at all).  Because the Court is unable to discern from the ALJ's opinion which of Plaintiff's activities undermined her credibility in the ALJ's eyes, this basis for the adverse credibility finding lacks the specificity required by Social Security Ruling 96-7p.

## C.      Plaintiff's Corroborating Lay Witness Evidence

Social Security Ruling 96-7p provides that when assessing a claimant's credibility, an ALJ must consider the entire record, which may include statements or other information provided by lay witnesses.  *See* 1996 WL 374186, at *1, *8.  Indeed, the ruling states that a "strong indication" of a claimant's credibility is her testimony's consistency with other record evidence, "including reports and observations of other

---

[2] The first medical record described by the ALJ, dated April 21, 2009, indicates that Plaintiff was scheduled for an orientation the following day for a part-time job as a salesperson at Sears.  It is possible that the ALJ considered Plaintiff's pursuit of this job opportunity an "activity" inconsistent with her disability claim.  However, even if this were the case, Plaintiff later reported to Dr. Dickson that she literally ran out of Sears on her first day of work because she "felt closed in," and never went back.  This end to the job opportunity is consistent with Plaintiff's disability claim.

persons concerning the individual's daily activities, behavior, and efforts to work." *Id.* at *5-*6.  Though the ruling requires *consideration* of all record evidence, an ALJ is not required in all cases to explain her reasoning concerning lay evidence.  *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *6 (2006).  The Sixth Circuit, however, encourages ALJs to articulate their reasons for discrediting lay testimony.  *See Maloney v. Comm'r of Soc. Sec.*, 480 Fed. Appx. *804, *810 (6th Cir. May 15, 2012) (unpublished) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)) ("If lay witness testimony is provided, the ALJ cannot disregard it without comment, and must give reasons for not crediting the testimony that are germane to each witness."); *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1054 (6th Cir. 1983) ("Perceptible weight must be given to lay testimony where ... it is fully supported by the reports of the treating physicians.").

Here, as recognized in the R&R [11], Plaintiff's mother, son, and former supervisor submitted written correspondence in which they "generally corroborated" Plaintiff's claims that she experiences anxiety and panic attacks.  The ALJ found the letters from Plaintiff's mother and son unpersuasive because "they are based upon the uncritical acceptance of the claimant's complaints."  This characterization of the letters is inaccurate, since the letters do not merely affirm secondhand complaints, but also describe the witnesses' personal observations of Plaintiff's symptoms.  For instance,

Plaintiff's son states that he often accompanies Plaintiff to stores, where he sometimes needs to escort her to her car when the shopping experience triggers a panic attack. Though this account does reflect the witness's belief—apparently grounded in direct observation of his mother—that Plaintiff's panic attacks were genuine, the ALJ did not explain why he dismissed that belief as "uncritical."

More importantly, the ALJ did not explain his reasoning in discrediting the evidence provided by Plaintiff's former supervisor, Bethany Lanier. Ms. Lanier explained that Plaintiff was terminated from the final job she held before the alleged onset of her disability due to difficulties relating to her conditions. For instance, Ms. Lanier stated that Plaintiff required assignment at an office location with relatively little customer traffic because "her anxiety levels would reach an unmanageable state" if more than two clients were in the office. Further, on at least two occasions, confrontations with clients caused Plaintiff to experience panic attacks, requiring Ms. Lanier to drive to Plaintiff's office to resolve the client issues. Finally, Ms. Lanier wrote that Plaintiff missed several shifts, claiming that recent stressful events had left her in no condition to work. This description, if true, would do much to corroborate Plaintiff's testimony concerning her limitations—but the ALJ did not explain why he found Ms. Lanier's letter unpersuasive, instead simply asserting that he did.

The Court does not find the ALJ's conclusory discussion of the evidence provided by Plaintiff's mother, son, and former supervisor to be legal error, as Social Security Ruling 96-7p imposes only a duty to consider all record evidence. However, Ruling 96-7p emphasizes that observers' descriptions of a claimant's activities and efforts to work, if consistent with the claimant's testimony, can be a strong indicator of the claimant's credibility. The evidence provided by Plaintiff's lay witnesses, and particularly by Ms. Lanier, should therefore be specifically addressed in the reassessment of Plaintiff's credibility on remand.

## IV. Conclusion

Plaintiff's Motion for Summary Judgment [9] asks the Court to reverse the ALJ's decision and award her benefits or, in the alternative, remand the case for further proceedings. A district court may reverse a decision of the Commissioner of Social Security and immediately award benefits "only if all essential factual issues have been resolved and the record adequately establishes [the claimant's] entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). The Court finds that the credibility of Plaintiff's testimony concerning the severity and limiting effects of her symptoms is an essential factual issue in this case. The ALJ failed to resolve the issue in a manner consistent with Social Security Agency regulations, as explained above. The Court may not decide questions of credibility.

*Garner*, 745 F.2d at 387.  Remand, rather than a judicial award of benefits, is thus the appropriate remedy.  *See Faucher*, 17 F.3d at 174-76.

For the foregoing reasons, the Court declines to adopt the Report and Recommendation [11].  Therefore,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [9] is **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [10] is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **REMANDED** for a reassessment of the credibility of Plaintiff's testimony concerning the severity and limiting effects of her symptoms, employing the proper legal standards, and a new decision on her application consistent with the reassessment.

This case is **CLOSED**.

**SO ORDERED**.

                                           s/Arthur J. Tarow
                                           Arthur J. Tarnow
Dated: September 23, 2014        Senior United States District Judge